Benjamin N. Gluck - State Bar No. 203997
  bng@birdmarella.com
Jean Y. Rhee - State Bar No. 234916
  jyr@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT,
  NESSIM, DROOKS & LINCENBERG, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Nazar Al Bussam

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NAZAR AL BUSSAM,<br><br>Defendant. | CASE NO. 10-1260-SJO<br><br>**REPLY IN SUPPORT OF MOTION TO STRIKE SURPLUSAGE FROM INDICTMENT**<br><br>Date: June 13, 2011<br>Time: 10:00 a.m.<br>Ctrm.: 1<br><br>Estimated Time For Motion: 30 minutes<br><br>Trial Date: July 19, 2011 |

Defendant Dr. Nazar Al Bussam moved to strike the Indictment's numerous references to patients' alleged lack of "legitimate medical need" for medications because these references are not the appropriate legal standard, they are misleading and confusing to the jury, and they are prejudicial to the defense.

## I. THE "LEGITIMATE MEDICAL NEED" LANGUAGE AT ISSUE WAS CLEARLY MEANT TO AND DOES IMPLY A (WRONG) LEGAL STANDARD RATHER THAN A MERE EVIDENTIARY ASSERTION

In its Opposition, the Government openly admits that "legitimate medical need" does not set forth the correct legal standard that the jury must apply in this case. Nevertheless, the Government asserts that the numerous references to this incorrect standard must remain. To justify this position, the Government advances a two-step argument. First, it attempts to characterize these allegations as "factual" rather than legal. Next, it argues that the references to patients' lack of "legitimate medical need" for medication are evidence relevant to establishing that Dr. Al Bussam engaged in the charged offence of distributing controlled substances "other than for a legitimate medical purpose" in violation of 21 U.S.C. § 841(a)(1).

The Government's argument fails at the first step because the allegations that Dr. Al Bussam prescribed controlled substances to individuals who "did not have a legitimate medical need" for such substances cannot be fairly characterized as "factual" and they are certainly unlikely to be seen as such by readers, including the jury. Indeed, they are conclusory statements that are utterly meaningless absent some additional explanation as to what is meant by the term "legitimate" when used in the context of a patient's medical needs.[1] This is exactly what makes these

---

[1] In contrast, a "factual" allegation would be one that simply refers to a fact, say, that the undercover agent did not suffer any pain. The reference to "legitimate medical need" sounds like an element of a legal standard (albeit an incorrect one), and implies that there is such thing as an "illegitimate medical need" or a "legitimate non-medical need."

1  references sound like legal standards.

2  Since the Government does not dispute that these allegations are incorrect
3  when viewed as legal standards, and they are devoid of meaning when viewed as
4  statements of fact, they must be stricken if they are prejudicial to Dr. Al Bussam,
5  which they plainly are. *See United States v. Laurienti*, 611 F.3d 530, 546 (9th Cir.
6  2010) (prejudicial allegations that are neither relevant nor material to the charges
7  should be stricken as surplusage); *see also* Adv. Comm. Notes, Fed. R. Crim. P. 7.

8  Providing the jury with this Indictment containing references to the phrase
9  "legitimate medical need" when the pertinent standard is "legitimate medical
10 purpose" is misleading, not only because of the similarity of the wording, but also
11 because the incorrect language features much more prominently in the Indictment
12 than the correct standard. First, it appears twice as many times in the Indictment as
13 the correct wording.[2] If this were not confusing enough, "legitimate medical need"
14 appears in the "General Allegations" at the beginning of the Indictment, while
15 "legitimate medical purpose" does not, so that the very first "legal standard" the jury
16 would see in the document is something that both parties agree is not the correct
17 one. Indeed, the formulaic use of the same words again, and again, and again,
18 sounds much closer to a legal standard than to an evidentiary assertion.

19 The consequences of the jury confusing "legitimate medical need" for the
20 proper standard for liability are dire because such an error would lower the
21 Government's burden of proving criminal liability under § 841(a)(1). By repeatedly
22 alleging that Dr. Al Bussam prescribed to patients who did not have a "legitimate
23 medical need," the Indictment implies that this is enough to convict, namely that Dr.

---

[2] The Indictment contains fourteen references to "legitimate medical need," Indictment at 2:5, 4:8-9, 4:14, 4:19, 4:27-28, 6:9-10, 6:15-16, 6:21, 6:26, 7:15, 7:11, 7:16, 7:21-22, and 8:4-5, but only seven references to "legitimate medical purpose," *id.* at 4:22-23, 9:7-8, 10:8, 11:7-8, 12:8, 13:7-8, 14:7-8.

1 Al Bussam is held to a strict liability standard to refrain from prescribing to patients
2 who do not actually have a medical need for the medication.  In fact, however, such
3 conduct could be perfectly legal under the correct "legitimate medical purpose"
4 standard, which the Government concedes requires it to prove that Dr. Al Bussam
5 both acted and intended to act outside the usual course of professional practice.
6 *United States v. Feingold*, 454 F.3d 1001, 1008 (9th Cir. 2006).  Specifically,
7 *irrespective of the patient's actual needs*, Dr. Al Bussam cannot be found guilty
8 pursuant to the correct standard if he either adhered to a proper standard of care or
9 was acting with the mistaken but good faith belief that the prescription was for a
10 legitimate medical purpose.  *Id.* at 1010-13 & n.3.  Thus, there is no strict liability
11 under § 841; suggesting that there is prejudices the defense.

## II. IT WOULD BE UNNECESSARY AND INAPPROPRIATE TO TRY TO CURE THE EFFECT OF THE REFERENCES THROUGH JURY INSTRUCTIONS

15 The Defense asserts that these unnecessary and incorrect references are
16 misleading, confusing, and prejudicial.  The Government's only real response to this
17 is to say that juries are generally presumed to follow instructions and this prejudice
18 can be cured via jury instructions specifying the correct standard.  But this argument
19 would require the court to extend the presumption in question well beyond the
20 bounds of precedent.  Indeed, if the presumption were truly as broad as stated by the
21 Government, no defendant would ever be able to prevail on a Rule 7(d) motion to
22 strike, because the jury would always be presumed to ignore any surplusage in favor
23 of correct instructions.
24 In actuality, however, while the *Richardson v. Marsh* case relied on by the
25 Government does recognize this presumption, it does not apply it in a vacuum to
26 cure prejudice in any and all cases as the Opposition implies.  On the contrary, the
27 Supreme Court clearly explained in *Richardson* that application of the rule requires
28 a balancing analysis, because it "is a pragmatic one, rooted less in the absolute

certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process." 481 U.S. 200, 211 (1987).

*Richardson* weighed the state's interest in using one defendant's confession against him against the prejudice that such a confession might cause his joint defendant. The court concluded that the presumption should apply given the confession's indisputable probative value, the interests served by having joint trials, and the redaction of certain material from the confession. In light of this balancing, court held the potential prejudice to the joint defendant should be addressed by way of a limiting instruction. *Id.* at 208-11.

Here, in sharp contrast to *Richardson*, there really is nothing that could even potentially outweigh the danger of prejudice. The Government asserts that the references are factual evidentiary assertions. As noted earlier, they do not appear so to a reader. Indeed, the repeated use of the exact same language sounds much more like a (wrong) legal standard than a mere factual assertion. But more importantly, the Government does not have to include every evidentiary allegation in the Indictment and it does not contend that it has done so here. So why does it insist on including these poorly drafted assertions, assertions that at the very least have the potential to mislead the jury and prejudice the defendant? In other words, what cost is there to the Government by striking these references? None whatsoever. In such a situation, *Richardson* clearly does not support the notion that one should rely on the mere "presumption" that the jury will correctly follow its instructions. As already explained above and in the Motion itself, the challenged language is neither accurate nor necessary. The interests of efficiency and fairness would plainly be better served by eliminating any possibility of prejudicial error before it occurs by striking the surplusage from the Indictment before providing it to the jury, rather than unnecessarily inviting prejudice by leaving it in and having to rely on a legal fiction that it can be cured *ex post facto* through the use of jury instructions.

Thus, the Court should grant Dr. Al Bussam's Motion and strike the repeated references to "legitimate medical need" from the Indictment.

DATED: June 6, 2011

        Benjamin N. Gluck
        Jean Y. Rhee
        BIRD, MARELLA, BOXER, WOLPERT,
           NESSIM, DROOKS & LINCENBERG, P.C.

By: /s/
        Benjamin N. Gluck
        Attorneys for Defendant Nazar Al Bussam