```
 1  ANDRÉ BIROTTE JR.
    United States Attorney
 2  ROBERT E. DUGDALE
    Assistant United States Attorney
 3  Chief, Criminal Division
    ARIEL A. NEUMAN (CSB 241594)
 4  BENJAMIN R. BARRON (CSB 257094)
    Assistant United States Attorneys
 5  Violent & Organized Crime Section
    OCDETF Section
 6       1500/1400 United States Courthouse
         312 North Spring Street
 7       Los Angeles, California 90012
         Telephone:  (213) 894-2917/3542
 8       E-mail:  ariel.neuman@usdoj.gov
                  ben.barron@usdoj.gov
 9
```

                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | CR No. 10-1260-SJO |
|---|---|---|
| Plaintiff, | ) | <u>GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OR ARGUMENT THAT DOCTORS MAY LEGALLY PRESCRIBE NARCOTIC CONTROLLED SUBSTANCES TO TREAT DRUG ADDICTION OR WITHDRAWAL OR THAT DOCTORS ARE NOT LEGALLY OBLIGATED TO COMPLY WITH GOVERNING REGULATIONS; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBIT</u> |
| v. | ) | |
| NAZAR AL BUSSAM, | ) | |
| Defendants. | ) | |
|  | ) | Trial/Hearing Date: July 19, 2011 |
|  | ) | Trial/Hearing Time: 8:30 a.m. |
|  | ) | Hon. S. James Otero |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby submits this Motion *In Limine* to Exclude Testimony or Argument that Doctors may Legally Prescribe Narcotic Controlled Substances to Treat Drug Addiction or Withdrawal or That Doctors are Not Legally Obligated to Comply with Governing Regulations. This motion is based on the attached

memorandum of points and authorities, the files and records of this case, the attached exhibit, and any additional evidence or argument the Court may wish to consider.

DATED: July 12, 2011

Respectfully Submitted,

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division


      /s/
BENJAMIN R. BARRON
ARIEL A. NEUMAN
Assistant United States Attorneys

Attorneys for Plaintiff
United States of America

**MEMORANDUM OF POINTS AND AUTHORITIES**

This matter is set for trial on July 19, 2011.  Defendant Nazar Al Bussam ("defendant") is charged in eighteen separate counts of the Indictment with conspiring to distribute and distributing controlled substances, in violation of 21 U.S.C. §§ 846, 841(a)(1).[1]  The charges are based on evidence that on nine separate occasions, defendant, a licensed medical doctor, issued prescriptions for addictive controlled substances to undercover agents with no legitimate medical purpose.  Because defendant is a medical doctor, in order to convict him of the charged offenses "the government must prove beyond a reasonable doubt that the defendant intentionally prescribed or distributed the controlled substance other than for a legitimate medical purpose and not in the usual course of professional practice."  United States v. Feingold, 454 F.3d 1001, 1009 (9th Cir. 2006).

On July 11, 2011, defense counsel served the government with an expert disclosure letter regarding the anticipated expert testimony of Dr. Richard L. Steig, which is attached hereto as Exhibit A.  The government has no objection to the majority of the disclosed testimony.  However, the government moves to exclude three portions of Dr. Steig's testimony, of which the government first learned when it received the disclosure letter on July 11.  Specifically, the government objects to the

---

[1] The drugs that defendant is charged with distributing are Percocet (oxycodone, a Schedule II narcotic drug controlled substance), Dilaudid (hydromorphone, a Schedule II narcotic drug controlled substance), Vicodin (hydrocodone, a Schedule III narcotic drug controlled substance), Xanax (alprazolam, a Schedule IV controlled substance), and Promethazine with Codeine (a Schedule V narcotic drug controlled substance).

1

following areas of testimony disclosed by defendant in the July 11 letter:

- Regulatory issues aside, it can be a legitimate medical purpose and within the usual course of professional practice for a doctor to prescribe narcotic medication to treat or maintain a narcotic dependent or addicted patient in order [to] prevent the patient from suffering withdrawal.  Withdrawal can be dangerous.

- The fact that various federal and state regulations attempt to prevent diversion by limiting the circumstances in which physicians are permitted to prescribe does not affect the legitimacy of the medical purpose itself.  This is true even if the doctor acts in a manner that violates a regulation.  If the doctor violates a regulation, he may be subject to the penalties associated with violation of the regulations but that does not affect the legitimacy of the underlying medical purpose of treatment, maintenance, and preventing withdrawal and/or treating chronic pain.

- Prescriptions for long acting opioids, including those which physicians may legally prescribe for pain, may meet an addicted or dependent patient's therapeutic needs for maintenance therapy and be a legitimate medical purpose within the course of professional practice.  Such treatment may nevertheless violate regulations designed to prevent diversion.

See Exhibit A at 2.  It thus appears that defendant will elicit testimony and argue that defendant's prescriptions of controlled substances as charged were legally permissible to treat narcotic addiction or withdrawal, that doctors are not obligated to comply with "various federal and state regulations" governing the prescriptions of controlled substances, and that doctors can be at the same time acting in violation of federal law but within the course of professional practice.

However, such testimony and argument are contrary to law, as discussed below: with very few exceptions that do not apply in this case, doctors cannot legally prescribe narcotic controlled substances for the treatment of narcotic addiction or withdrawal,

2

and under 21 U.S.C. §§ 841(a)(1) and 843, a doctor cannot legally violate federal regulations promulgated by the Attorney General concerning the prescription of controlled substances. Accordingly, the government moves to exclude those portions of the noticed expert testimony, or any other related evidence or argument, because they are irrelevant. See Fed. R. Evid. 401. In addition, such evidence and/or argument should be excluded pursuant to Fed. R. Evid. 403: it creates a serious risk of jury confusion, misleading of the jury, and unfair prejudice, in that it incorrectly indicates to the jury that defendant can be acquitted if the jury finds that defendant prescribed the narcotic controlled substances at issue in this case to treat narcotic addiction or withdrawal. It also suggests that defendant is not subject to federal regulations governing prescriptions of controlled substances. Neither of these is a legally valid defense. See Fed. R. Evid. 403 (evidence inadmissible if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury").

In Hayes, the Ninth Circuit addressed the situation at issue here and held that doctors cannot legally prescribe narcotic controlled substances to treat addiction or withdrawal. See United States v. Hayes, 794 F.2d 1348, 1352 (9th Cir. 1986). There, like here, the defendant was a medical doctor charged with prescribing Schedule II controlled substances to patients without legitimate medical purpose. See id. at 1350. On appeal, the Ninth Circuit approved the following jury instruction which was provided at trial by the district court:

> Narcotic withdrawal or addiction is not a sufficient medical condition justifying the prescribing or administering of a narcotic controlled substance. Therefore, if you find that the defendant ... wrote a prescription for a narcotic control[led] substance on a narcotic addict who did not have a medical complaint other than addiction or withdrawal requiring the type of narcotic controlled substances prescribed, then the issuance of said prescription would not be in good faith in the usual course of professional practice for a legitimate medical purpose.

Id. at 1352. The Ninth Circuit held that the instruction was proper pursuant to 21 C.F.R. § 1306.07(c) (1985),[2] which prohibits doctors from "administer[ing] or dispen[ing] narcotic drugs in a hospital to maintain or detoxify a person as an incidental adjunct to medical or surgical treatment of conditions other than addiction." Hayes, 794 F.2d at 1352. Accordingly, the Ninth Circuit held that the defendant in Hayes thus could not legally raise a defense that he prescribed the controlled substances in question to treat addiction or withdrawal. See id. ("If a patient were a narcotic addict and the only medical complaint was addiction or withdrawal, [the defendant] could not have issued the drugs in good faith.").

The C.F.R. section relied upon in Hayes was modified in 2005 and now reads as follows: "A practitioner may administer or dispense (including prescribe) any Schedule III, IV, or V narcotic drug approved by the Food and Drug Administration [("FDA")] specifically for use in maintenance or detoxification

---

[2] 21 C.F.R. § 1306.07(c) (1985) provided: "This section is not intended to impose any limitations on a physician or authorized hospital staff to administer or dispense narcotic drugs in a hospital to maintain or detoxify a person as an incidental adjunct to medical or surgical treatment of conditions other than addiction, or to administer or dispense narcotic drugs to persons with intractable pain in which no relief or cure is possible or none has been found after reasonable efforts."

4

treatment to a narcotic dependent person if the practitioner complies with the requirements of § 1301.28 of this chapter."[3] 21 C.F.R. § 1306.07(d); see also 21 C.F.R. § 1306.04(c) ("A prescription may not be issued for 'detoxification treatment' or 'maintenance treatment,' unless the prescription is for a Schedule III, IV, or V narcotic drug approved by the [FDA] specifically for use in maintenance or detoxification treatment and the practitioner is in compliance with requirements in § 1301.28 of this chapter ."). Only three narcotic drugs have been approved by the FDA for this purpose: methadone, levomethadyl acetate, and buprenorphine. See 42 C.F.R. § 8.12(h). None of these drugs are relevant here.

Here, the controlled substance prescriptions at issue were written by defendant for oxycodone, hydromorphone, hydrocodone, alprazolam, and promethazine with codeine, none of which are approved by the FDA for the treatment of addiction or withdrawal. Accordingly, the prescription of those drugs for that purpose would be illegal and subject to criminal liability under 21 U.S.C. § 841(a)(1).[4]

Yet, as noted, defendant's expert would testify that "it can be a legitimate medical purpose and within the usual course of

---

[3] 21 C.F.R. § 1301.28 regulates the issuance of electronic prescriptions and is not at issue in this case, which concerns paper prescriptions written by defendant.

[4] Indeed, as indicated above, 21 C.F.R. § 1306.04(c) prohibits the issuance of any Schedule II narcotic controlled substances or of any non-narcotic controlled substance for the treatment of addiction or withdrawal; thus, oxycodone (Schedule II), hydromorphone (Schedule II), or alprazolam (non-narcotic), cannot be prescribed for that purpose under any circumstance.

5

professional practice for a doctor to prescribe narcotic medication to treat or maintain a narcotic dependent or addicted patient in order [to] prevent the patient from suffering withdrawal." Exhibit A at 2. For the foregoing reasons, this noticed expert testimony is contrary to the law as applied to the controlled substances at issue in this case. That is, contrary to the expert's noticed testimony, doctors cannot prescribe the specific narcotic controlled substances the defendant is charged with distributing in order to treat narcotic addiction or withdrawal. Accordingly, the expert witness's testimony would be irrelevant to the charges in this case, confusing, and misleading.

Dr. Steig's testimony is also legally incorrect because it indicates that "[t]he fact that various federal and state regulations attempt to prevent diversion by limiting the circumstances in which physicians are permitted to prescribe does not affect the legitimacy of the medical purpose itself." Id. This is a misstatement of the law. Under 21 U.S.C. § 841(a)(1), "<u>Except as authorized by this subchapter</u>, it shall be unlawful for any person knowingly or intentionally . . . [to] possess with intent to manufacture, distribute, or dispense, a controlled substance." (Emphasis added). The clause "except as authorized by this subchapter" refers to 21 U.S.C. § 822, which provides that,

> Every person who manufactures or distributes any controlled substance or list I chemical, or who proposes to engage in the manufacture or distribution of any controlled substance or list I chemical, shall obtain annually a registration issued by the Attorney General in accordance with the rules and regulations promulgated by him.

6

See Feingold, 454 F.3d at 1003.  Title 21 therefore makes clear that defendant is in fact criminally liable under Section 841(a)(1) for failing to comply with applicable "rules and regulations," which include 21 C.F.R. §§ 1306.04(c) and 1306.07(d).[5]

Accordingly, the areas of anticipated testimony identified above should be excluded both under Rule 401 and under Rule 403. First, those areas of testimony are irrelevant both because they do not advance a legitimate defense to the conduct charged in the Indictment, and because they incorrectly suggest to the jury that the defendant is not subject to criminal liability for violating federal regulations governing the prescription of controlled substances.  See Fed. R. Evid. 401.  Second, those areas of testimony also should be excluded because they are of no probative value to the defense and will create a serious risk of jury confusion, misleading the jury, and unfair prejudice by indicating to the jury that defendant legally could prescribe the narcotic controlled substances in this case to treat addiction or withdrawal, or that defendant could legally violate federal regulations governing the prescription of controlled substances. See Fed. R. Evid. 403.

///

///

---

[5] Indeed, the reason the Feingold test regarding a doctor's legitimate medical purpose even exists is because that test is codified in 21 C.F.R. § 1306.04(a): "A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice."  See Feingold, 4 F.3d at 1003 (citing 21 C.F.R. § 1306.04).

7

1    For the foregoing reasons, the government moves <u>in limine</u> to exclude any testimony or argument, or any suggestion, that defendant could legally prescribe the controlled substances at issue in this case to treat narcotic addiction or withdrawal, or that doctors generally can prescribe narcotic controlled substances to treat addiction or withdrawal, or that doctors can act within the usual course of practice while simultaneously violating federal law.

DATED: July 12, 2011

                                      Respectfully Submitted,

                                      ANDRÉ BIROTTE JR.
                                      United States Attorney

                                      ROBERT E. DUGDALE
                                      Assistant United States Attorney
                                      Chief, Criminal Division

                                              /s/
                                      BENJAMIN R. BARRON
                                      ARIEL NEUMAN
                                      Assistant United States Attorneys

                                      Attorneys for Plaintiff
                                      United States of America