ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
ARIEL A. NEUMAN (CSB 241594)
BENJAMIN R. BARRON (CSB 257094)
Assistant United States Attorneys
Violent & Organized Crime Section
OCDETF Section
    1500/1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-2917/3542
    E-mail:  ariel.neuman@usdoj.gov
            ben.barron@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 10-1260-SJO |
| | ) | |
| Plaintiff, | ) | <u>TRIAL MEMORANDUM</u> |
| | ) | |
| v. | ) | [21 U.S.C. § 846: Conspiracy to |
| | ) | Distribute Oxycodone, |
| NAZAR AL BUSSAM, | ) | Hydromorphone, Hydrocodone, |
| | ) | Alprazolam, and Promethazine |
| Defendant. | ) | with Codeine; 21 U.S.C. |
| | ) | §§ 841(a)(1), (b)(1)(C), |
| | ) | (b)(1)(D), (b)(2): Distribution |
| | ) | of Oxycodone, Hydromorphone, |
| | ) | Hydrocodone, and Alprazolam; |
| | ) | 18 U.S.C. § 2(b): Causing an |
| | ) | Act To Be Done; 21 U.S.C. |
| | ) | § 853: Criminal Forfeiture] |
| | ) | |
| | ) | Trial Date: July 19, 2011 |
| | ) | Trial Time: 9:00 a.m. |
| | ) | Place: Courtroom of the |
| | ) |       Hon. S. James. Otero |

    Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Ariel Neuman and Benjamin Barron, hereby submits its trial memorandum.

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . iii

I.   CASE SCHEDULING MATTERS . . . . . . . . . . . . . . . 2

II.  THE INDICTMENT . . . . . . . . . . . . . . . . . . . 2

III. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . 3

IV.  RELEVANT LAW: COUNTS ONE THROUGH EIGHTEEN . . . . . . . 7

     A.   Elements . . . . . . . . . . . . . . . . . . . 7

          1.   Distribution . . . . . . . . . . . . . . 7

          2.   Conspiracy . . . . . . . . . . . . . . . 8

          3.   Causing an Act to Be Done . . . . . . . . 9

V.   CRIMINAL FORFEITURE . . . . . . . . . . . . . . . . 10

     A.   The Forfeiture Phase is Determined by the Court
          After the Jury has Rendered a Verdict . . . . . 10

     B.   The Standard of Proof for Criminal Forfeiture
          Is Preponderance of the Evidence . . . . . . . 12

     C.   Third Party Interests Are Addressed in a Separate
          Proceeding . . . . . . . . . . . . . . . . . 13

VI.  EVIDENTIARY ISSUES . . . . . . . . . . . . . . . . 14

     A.   Authentication, Identification and Chain of
          Custody . . . . . . . . . . . . . . . . . . . 14

     B.   Expert and Summary Testimony . . . . . . . . . 15

          1.   DEA Diversion Investigator Susannah
               Herkert . . . . . . . . . . . . . . . . 15

          2.   Rick Chavez, M.D. . . . . . . . . . . . . 17

          3.   Kathy Ellis . . . . . . . . . . . . . . . 19

     C.   CURES Report and Testimony . . . . . . . . . . 23

     D.   The Prescriptions and Distribution Evidence . . . . 26

          1.   Prescriptions . . . . . . . . . . . . . . 26

          2.   Patient Files . . . . . . . . . . . . . . 27

i

TABLE OF CONTENTS (Cont'd.)

PAGE

E.  Audio Recordings and Transcripts . . . . . . . . . 28

F.  Cross-Examination . . . . . . . . . . . . . . . . . 31

    1.  Cross-Examination of Defendant . . . . . . . 31

    2.  Cross-Examination of Other Witnesses . . . . 32

G.  Character Evidence . . . . . . . . . . . . . . . 32

H.  Cross-examination and Defense Testimony . . . . . 34

I.  Affirmative Defenses . . . . . . . . . . . . . . 36

VII. CONCLUSION . . . . . . . . . . . . . . . . . . . . 37

ii

TABLE OF AUTHORITIES

PAGE(S)

**FEDERAL CASES**:

Abdel v. United States,
    670 F.2d 73 (7th Cir. 1982) . . . . . . . . . . . . . . 26

Barsky v. United States,
    339 F.2d 180 (9th Cir. 1964) . . . . . . . . . . . . . 21

Boerner v. Brown & Williamson Tobacco Co.,
    394 F.3d 594 (8th Cir. 2005) . . . . . . . . . . . . . 25

Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co.,
    466 F.2d 722 (7th Cir. 1972) . . . . . . . . . . . . . 20

Gallegos v. United States,
    276 F.2d 914 (9th Cir. 1960) . . . . . . . . . . . . . 15

Harris v. New York,
    401 U.S. 222 (1971) . . . . . . . . . . . . . . . . . 31

Libretti v. United States,
    516 U.S. 29 (1995) . . . . . . . . . . . . . . . . . . 12

Michelson v. United States,
    335 U.S. 469 (1948) . . . . . . . . . . . 32, 33, 34, 36

Nye & Nissen v. United States,
    336 U.S. 613 (1949) . . . . . . . . . . . . . . . . . 10

Reyes v. United States,
    383 F.2d 734 (9th Cir. 1967) . . . . . . . . . . . . . 15

United States v. Abbas,
    504 F.2d 123 (9th Cir. 1974) . . . . . . . . . . . . . 22

United States v. Alerre,
    430 F.3d 681 (4th Cir. 2005) . . . . . . . . . . . . . 18

United States v. Aviles,
    623 F.2d 1192 . . . . . . . . . . . . . . . . . . . . 15

United States v. Baker,
    10 F.3d 1374 (9th Cir. 1993) . . . . . . . . . . . . . 22

United States v. Baker,
    855 F.2d 1353 (8th Cir. 1988) . . . . . . . . . . . . 25

United States v. Black,
    767 F.2d 1334 (9th Cir. 1985) . . . . . . . . . . 31, 34

United States v. Bruner,
    657 F.2d 1278 (D.C. Cir. 1981) . . . . . . . . . . . . 26

iii

TABLE OF AUTHORITIES (Cont'd.)

PAGE(S)

**FEDERAL CASES**:

United States v. Carrillo,
        16 F.3d 1046 (9th Cir. 1994) . . . . . . . . . . . . . . 28

United States v. Catabran,
        836 F.2d 453 (9th Cir. 1982) . . . . . . . . . . . . . . 23

United States v. Chu Kong Yin,
        935 F.2d 990 (9th Cir. 1991) . . . . . . . . . . . . . . 14

United States v. Collicott,
        92 F.3d 973 (9th Cir. 1996) . . . . . . . . . . . . . . 30

United States v. Cuozzo,
        962 F.2d 945 (9th Cir. 1992) . . . . . . . . . . . . . . 31

United States v. Davis,
        564 F.2d 840 (9th Cir. 1978) . . . . . . . . . . . . . . 8

United States v. DeFries,
        129 F.3d 1293 (D.C. Cir. 1997) . . . . . . . . . . . . . 12

United States v. De Peri,
        778 F.2d 963 (3rd Cir. 1985) . . . . . . . . . . . . . . 21

United States v. Dicter,
        198 F.3d 1284 (11th Cir. 1999) . . . . . . . . . . . . . 12

United States v. Feingold,
        454 F.3d 1001 (9th Cir. 2006) . . . . . . . . . . . . . 8

United States v. Fernandez,
        839 F.2d at 639 (9th Cir. 1988) . . . . . . . . . . . . 30

United States v. Franks,
        956 F.2d 872 (9th Cir. 1992) . . . . . . . . . . . . . 35

United States v. Garcia-Guizar,
        160 F.3d 511 (9th Cir. 1998) . . . . . . . . . . . . . . 12

United States v. Gardner,
        611 F.2d 770 (9th Cir. 1980) . . . . . . . . . . . . . . 22

United States v. Gay,
        967 F.2d 322 (9th Cir. 1992) . . . . . . . . . . . . . . 31

United States v. Giese,
        597 F.2d 1170 (9th Cir. 1979) . . . . . . . . . . . . . 34

iv

TABLE OF AUTHORITIES (Cont'd.)

PAGE(S)

**FEDERAL CASES**:

United States v. Havens,
     446 U.S. 620 (1980) . . . . . . . . . . . . . . . 31, 32

United States v. Johnson,
     594 F.2d 1253 (9th cir. 1979) . . . . . . . . . . . 21

United States v. Katz,
     445 F.3d 1023 (8th Cir. 2006) . . . . . . . . . . . 24

United States v. Kenofsky,
     543  U.S. 440 (1917) . . . . . . . . . . . . . . . . 9

United States v. Lemire,
     720 F.2d 1327 (D.C. Cir. 1983) . . . . . . . . . . . 20

United States v. Marin,
     669 F.2d 73 (2d Cir. 1982) . . . . . . . . . . . . . 30

United States v. Markee,
     425 F.2d 1043 (9th Cir. 1970) . . . . . . . . . . . 10

United States v. Matta-Ballesteros,
     71 F.3d 754 (9th Cir. 1995) . . . . . . . . . . . . 15

United States v. McCollom,
     664 F.2d 56 (5th Cir. 1981) . . . . . . . . . . . . 34

United States v. McCracken,
     488 F.2d 406 (5th Cir. 1974) . . . . . . . . . . . 35

United States v. Mehrmanesh,
     682 F.2d 1303 (9th Cir. 1982) . . . . . . . . . . . 34

United States v. Miranda-Uriarte,
     649 F.2d 1345 (9th Cir. 1981) . . . . . . . . . . . 34

United States v. Murillo,
     255 F.3d 1169 (9th Cir. 2001) . . . . . . . . . . . 16

United States v. Myers,
     847 F.2d 1408 (9th Cir. 1988) . . . . . . . . . . . 21

United States v. Nakai,
     413 F.3d 1019 (9th Cir. 2005) . . . . . . . . . . . 29

United States v. Olano,
     62 F.3d 1180 (9th Cir. 1995) . . . . . . . . . . . 22

United States v. Ortega,
     203 F.3d 675 (9th Cir. 2000) . . . . . . . . . . . 29

v

TABLE OF AUTHORITIES (Cont'd.)

PAGE(S)

**FEDERAL CASES**:

United States v. Ospina,
    739 F.2d 448 (9th Cir. 1984) . . . . . . . . . . . . . . . 28

United States v. Patel,
    131 F.3d 1195 (7th Cir. 1997) . . . . . . . . . . . . . 12

United States v. Paulino,
    13 F.3d 20 (1st Cir. 1994) . . . . . . . . . . . . . . . 27

United States v. Poschatta,
    829 F.2d 1477 (9th Cir. 1987) . . . . . . . . . . . . . 22

United States v. Radseck,
    718 F.2d 233 (7th Cir. 1983) . . . . . . . . . . . . . 21

United States v. Reed,
    726 F.2d 570 (9th Cir. 1984) . . . . . . . . . . . . . 35

United States v. Rogers,
    102 F.3d 641 (1st Cir. 1996) . . . . . . . . . . . . . 12

United States v. Rosenberg,
    515 F.2d 190 (9th Cir. 1975) . . . . . . . . . . . . 8, 27

United States v. Rubino,
    431 F.2d 284 (6th Cir. 1970) . . . . . . . . . . . . . 21

United States v. Santana-Camacho,
    931 F.2d 966 (1st Cir. 1991) . . . . . . . . . . . . . 33

United States v. Shabani,
    513 U.S. 10 (1994) . . . . . . . . . . . . . . . . . . . 9

United States v. Shirley,
    884 F.2d 1130 (9th Cir. 1989) . . . . . . . . . . . . . 20

United States v. Soulard,
    730 F.2d 1292 (9th Cir. 1984) . . . . . . . . . . . . . 20

United States v. Stump,
    735 F.2d 273 (7th Cir. 1984) . . . . . . . . . . . 24, 25

United States v. Theodoropoulous,
    866 F.2d 587 (3d Cir. 1989) . . . . . . . . . . . . . 17

United States v. Wood,
    943 F.2d 1048 (9th Cir. 1991) . . . . . . . . . . . . . 22

Wong Wing Foo v. McGrath,
    196 F.2d 120 (9th Cir. 1952) . . . . . . . . . . . . . 25

TABLE OF AUTHORITIES (Cont'd.)

PAGE(S)

**FEDERAL STATUTES**:

Title 18, United States Code:

    Section 2(b) . . . . . . . . . . . . . . . . . . . . 1, 3, 9

Title 21, United States Code:

    Section 802(8), (11) . . . . . . . . . . . . . . . . . . 8

    Section 841(a)(1) . . . . . . . . . . . . . . . . . . . 7

    Section 841(a)(1),(C),(D) . . . . . . . . . . . . 1, 2, 8

    Section 846 . . . . . . . . . . . . . . . . 1, 2, 8, 10

    Section 853 . . . . . . . . . . . . . . . . . . . . . . 1

    Section 853(n)(22) . . . . . . . . . . . . . . . . . . 13

**RULES**:

Federal Rule Of Criminal Procedure:

    Rule 7(c)(2) . . . . . . . . . . . . . . . . . . . . . 10

    Rule 16(a)(1)(F) and (G) . . . . . . . . . . . . . . . 16

    Rule 32.2(a) . . . . . . . . . . . . . . . . . . . . . 10

    Rule 32.2(b)(1) . . . . . . . . . . . . . . . 10, 11, 13

    Rule 32.2(b)(2), (c) . . . . . . . . . . . . . . . . . 13

    Rule 32.2(c)(1) . . . . . . . . . . . . . . . . . . . 13

Federal Rule Of Evidence:

    Rule 403 . . . . . . . . . . . . . . . . . . . . . . . 25

    Rule 404(a) . . . . . . . . . . . . . . . . . . . 32, 33

    Rule 404(b) . . . . . . . . . . . . . . . . . . . . . 24

    Rule 405(a) . . . . . . . . . . . . . . . . . . . 33, 36

    Rule 608 . . . . . . . . . . . . . . . . . . . . . . . 32

    Rule 801(d)(2)(B) . . . . . . . . . . . . . . . . 27, 29

    Rule 803(8)(B) . . . . . . . . . . . . . . . . . . . . 25

TABLE OF AUTHORITIES (Cont'd.)

PAGE(S)

**RULES**:

Federal Rule Of Evidence:

     Rule 807 . . . . . . . . . . . . . . . . . . . . . . . 26

     Rule 1004  . . . . . . . . . . . . . . . . . . . . . . 23

     Rule 1006  . . . . . . . . . . . . . . . . . . . . . . 22

**MISCELLANEOUS**:

Weinstein's Federal Evidence:

     Section 607.10 . . . . . . . . . . . . . . . . . . . . 31

I.

## CASE SCHEDULING MATTERS

Jury trial is set for July 19, 2011 at 8:30 a.m.  The estimated time for the government's case-in-chief is four to five court days.  The government anticipates calling approximately seven to ten witnesses in its case-in-chief.  This includes the three law enforcement officers who conducted undercover meetings with defendant while posing as patients, two expert witnesses, two individuals who worked with defendant in his medical offices, an employee from the California Department of Justice - Bureau of Narcotics Enforcement to testify about defendant's prescribing history, and other chain of custody witnesses if stipulations as to the admissibility of certain evidence cannot be reached.

II.

## THE INDICTMENT

The Indictment charges 18 counts against defendant Nazar Al Bussam ("defendant").  Defendant is charged in count one of the Indictment with conspiring to distribute oxycodone, hydromorphone, hydrocodone, alprazolam, and promethazine with codeine outside of the usual course of professional practice and without a legitimate medical purpose, in violation of 21 U.S.C. § 846.  Counts two through eighteen charge defendant with distributing controlled substances outside of the usual course of professional practice and without a legitimate medical purpose, in violation of 21 U.S.C. § 841(a)(1), as follows: counts two and seventeen charge the unlawful distribution of hydromorphone; counts three through eight charge the unlawful

2

distribution of oxycodone; count nine charges the unlawful
distribution of hydrocodone; and counts ten through sixteen and
eighteen charge the unlawful distribution of alprazolam.  In
counts seventeen and eighteen, defendant is charged both with
distribution of hydromorphone and alprazolam, as well as with
causing others to distribute such substances under 18 U.S.C.
§ 2(b).  The Indictment was filed on November 19, 2010, and a
copy is attached as Exhibit A to this memorandum.

III.

STATEMENT OF FACTS

The government intends to prove the following facts at
trial, among others:

Defendant is a medical doctor currently licensed by the
Medical Board of California and registered with the DEA to
prescribe controlled substances.  Prior to his arrest, defendant
operated two offices, one in Los Angeles ("the Los Angeles
office") and another in Downey ("the Downey office").  From at
least October 2007 until his arrest on October 20, 2010,
defendant prescribed large quantities of addictive prescription
controlled substances, including oxycodone, hydromorphone,
hydrocodone, and alprazolam, without a legitimate medical
purpose.  Defendant sold the prescriptions to individuals for
cash, and the individuals later filled the prescriptions at
pharmacies.

Among the witnesses the government intends to call at trial
are three undercover agents ("the UCs") who posed as patients
during the underlying investigation.  On nine separate occasions
between January 26, 2009 and July 7, 2010, the UCs met either

3

with defendant at the Downey office or, specifically on July 6 and 7, 2010, with Santiago and Rosemary Mendoza, who assisted defendant in running the Los Angeles office.  The meetings were video and audio recorded with two exceptions: on undercover meetings that occurred on July 2, 2009 and July 7, 2010, recording devices worn by the UCs malfunctioned.

During each of the undercover meetings, the UCs provided cash payments of more than $100 to employees working with defendant.  The UCs would then meet with defendant or, with respect to the July 6 and July 7 meetings, with Rosemary and Santiago Mendoza acting on defendant's behalf.  Following those meetings, the UCs received prescriptions for controlled substances written by defendant, which form the basis of the distribution counts (counts two through eighteen) of the Indictment.  Specifically, through those prescriptions, defendant illegally distributed Percocet (oxycodone, a Schedule II narcotic drug controlled substance), Dilaudid (hydromorphone, a Schedule II narcotic drug controlled substance), Vicodin (hydrocodone, a Schedule III narcotic drug controlled substance), Xanax (alprazolam, a Schedule IV controlled substance), and Promethazine with Codeine (a Schedule V narcotic drug controlled substance).

The video recordings demonstrate that defendant prescribed those controlled substances in bad faith and without a legitimate medical purpose.  For example, defendant did not conduct a thorough physical exam of the UCs, did not order x-rays or other tests, did not consider alternatives to prescribing narcotic controlled substances, did not examine the

4

relevant portion of the UCs' bodies, and asked virtually no questions of the UCs to determine whether they in fact had any need for the prescribed controlled substances.  Instead, defendant's regular question to the UCs was, essentially, "what [drug] do you want today?"

As noted, the witnesses who will testify include the three UCs who met with defendant and/or Rosemary and Santiago Mendoza. Through those witnesses, the government will admit into evidence the video recordings of the undercover meetings with defendant. The government will also play excerpts of those video exhibits synched with transcripts, but the transcripts will not be admitted in evidence and the synched videos will not be sent to the jury during deliberations.  Santiago Mendoza, who assisted defendant in running the Los Angeles office, and Ricardo Moran, who worked as a medical assistant at the Downey office, may testify regarding their experiences working with defendant. Mendoza will also testify about his meeting with two of the UCs on July 6, 2011 (conducted undercover and without his knowledge of the ongoing investigation), and a video excerpt of that meeting may be played during his testimony.

Kathy Ellis, who works with the California Department of Justice - Bureau of Narcotics Enforcement, will provide summary testimony regarding records for defendant from the Controlled Substance Utilization Review and Evaluation System ("CURES"), which is a database maintained by the California Department of Justice that, among other things, tracks filled prescriptions of controlled substances, including information relating to the prescribing doctor.  Ellis' summary testimony will include the

5

1   quantity of controlled substances prescribed by defendant

2   between October 2007 and his arrest in October 2010.  During

3   Ellis's testimony, the government will admit summary reports,

4   which will summarize the quantity of defendant's prescription of

5   oxycodone, hydromorphone, hydrocodone, and alprazolam from

6   October 2007 through October 2010 (the period charged in count

7   one of the indictment), and which will show that defendant's

8   prescriptions of those substances rank among the highest of any

9   doctor in California.

10       Susannah Herkert, a DEA Diversion Investigator, will

11  provide fact testimony concerning the initiation the

12  investigation in this matter.  DI Herkert will also provide

13  background testimony for the jury concerning drug scheduling and

14  DEA registration.

15       Dr. Rick Chavez will provide expert testimony concerning

16  World Health Organization, California Medical Board, and

17  community standards regarding pain treatment and the prescribing

18  of opioid medications including oxycodone, hydromorphone, and

19  hydrocodone.  He will also provide background testimony on the

20  interactions of these drugs with alprazolam and promethazine

21  with codeine, all of which were prescribed by defendant to the

22  UCs.  He is expected to opine that the UCs did not demonstrate

23  any legitimate medical need for the substances and that

24  defendant or, by proxy, Santiago Mendoza, conducted insufficient

25  examination of those UCs to justify the prescriptions written

26  for them.  Because the undercover video recordings form a basis

27  of Dr. Chavez's opinion, portions of those videos may be played

28  during his testimony.

Concerning Dr. Chavez's expert testimony: the government presently anticipates calling this witness as early as the end of Wednesday, July 20.  Dr. Chavez maintains an active medical practice, for which a medical emergency may arise requiring Dr. Chavez's immediate attention.  While the government will make best efforts to have Dr. Chavez available to testify on that date, if Dr. Chavez is rendered unavailable, including during the course of his testimony, the government may request that the Court conclude trial early on the day of Dr. Chavez's testimony to allow Dr. Chavez to resume his testimony the following day.

IV.

RELEVANT LAW: COUNTS ONE THROUGH EIGHTEEN

A.   Elements

1.   Distribution

Because the defendant is a physician practitioner and authorized by law to distribute controlled substances, in order for defendant to be guilty of counts two through eighteen of the Indictment, which charge violations of Title 21, United States Code, § 841(a)(1), the government will prove: (1) defendant knowingly and intentionally distributed oxycodone, hydromorphone, hydrocodone, or alprazolam (as separately charged in each count) knowing that it was a controlled substance; (2) the distribution of oxycodone, hydromorphone, hydrocodone, or alprazolam was outside the usual course of professional practice and without a legitimate medical purpose; and (3) defendant acted with the intent to distribute the oxycodone, hydromorphone, hydrocodone, or alprazolam outside the usual course of professional practice and without a legitimate medical

7

purpose.  See United States v. Feingold, 454 F.3d 1001, 1008
(9th Cir. 2006); Ninth Circuit Model Criminal Jury Instruction
No. 9.18 (2010).

     A doctor "distributes" a controlled substance by the act of
writing a prescription outside the usual course of professional
practice and not for a legitimate medical purpose.  21 U.S.C.
§§ 802(8),(11); United States v. Davis, 564 F.2d 840, 845 (9th
Cir. 1978) (analyzing statutory definitions of "distribute" and
"deliver" under 21 U.S.C. § 802 and stating: "It follows that by
creating the means by which controlled substances can be
transferred, a doctor 'distributes' within the meaning of 21
U.S.C. § 841(a) by the act of writing a prescription outside the
usual course of professional practice and not for a legitimate
medical purpose."); United States v. Rosenberg, 515 F.2d 190,
200 (9th Cir. 1975) (holding that "distributing" was proper
language for doctor who wrote prescriptions in violation of
Section 841(a)).

          2.   Conspiracy

     As to count one of the Indictment, which charges defendant
with conspiracy to distribute oxycodone, hydromorphone,
hydrocodone, alprazolam, and promethazine with codeine, in
violation of Title 21, United States Code, § 846, the government
will prove: (1) beginning on a date unknown, and continuing to
on or about October 20, 2010, there was an agreement between two
or more persons to distribute controlled substances, including
oxycodone, hydromorphone, hydrocodone, alprazolam, and
promethazine with codeine oxycodone, outside the course of
professional practice and not for a legitimate medical purpose;

                              8

1  and (2) the defendant became a member of the conspiracy knowing

2  of at least one of its objects and intending to help accomplish

3  it.  See Ninth Circuit Model Criminal Jury Instruction No. 9.19

4  (2010). (You were using the instruction that has since been

5  replaced)

6      For a conspiracy to have existed, it is not necessary that

7  the conspirators made a formal agreement or that they agreed on

8  every detail of the conspiracy.  It is not enough, however, that

9  they simply met, discussed matters of common interest, acted in

10  similar ways, or perhaps helped one another.  The jury must find

11  that there was a plan to commit at least one of the crimes

12  alleged in the indictment as an object or purpose of the

13  conspiracy, with all of the jurors agreeing as to the particular

14  crime which the conspirators agreed to commit.  Id.

15      The government is not required to prove the commission of

16  any overt acts in furtherance of the conspiracy.  See Id.; see

17  also United States v. Shabani, 513 U.S. 10, 15-16 (1994).

18              3.    Causing an Act to Be Done

19      The government alleges in counts seventeen and eighteen of

20  the Indictment that defendant is also guilty of unlawfully

21  distributing controlled substances by willfully causing the

22  commission of the crime, under 18 U.S.C. § 2(b).  This is an

23  alternative theory of liability.

24      The essential elements for violating 18 U.S.C. § 2(b) are:

25  (1) the crime of unlawfully distributing the relevant controlled

26  substance was committed by someone; and (2) the defendant

27  willfully caused, ordered, directed, or otherwise brought about

28  the commission of the crime.  United States v. Kenofsky, 543

9

1  U.S. 440, 443 (1917); <u>United States v. Markee</u>, 425 F.2d 1043,

2  1046 (9th Cir. 1970); <u>Nye & Nissen v. United States</u>, 336 U.S.

3  613, 618-19 (1949).

V.

CRIMINAL FORFEITURE

A.   <u>The Forfeiture Phase is Determined by the Court After</u>
      <u>the Jury has Rendered a Verdict</u>

At the end of the Indictment, the government notified
defendant pursuant to Rules 7(c)(2) and 32.2(a) of the Federal
Rules of Criminal Procedure that it seeks forfeiture of property
in the event he is convicted of violating 21 U.S.C. §§ 846
and/or 841(a)(1) ("the forfeiture allegation").  The forfeiture
allegation seeks forfeiture of any property derived from or
used, in any manner or part, to commit, or to facilitate the
commission, of the charged offenses.

Pursuant to Rule 32.2(b), Federal Rules of Criminal
Procedure, in any criminal case in which the Government seeks
the forfeiture of the defendant's property as a consequence of
the defendant's conviction, the court must conduct a proceeding
to determine the forfeitability of the property "as soon as
practicable" after a verdict or finding of guilt.  Fed. R. Crim.
P. 32.2(b)(1).  Since forfeiture is a post-verdict issue that
arises only upon conviction for the underlying substantive
offense(s), the general practice in this and other districts is
not to advise the jury of the forfeiture allegation.  The jury
is advised of the forfeiture only after conviction where the
defendant makes a specific request that the jury not be excused,
and where jury issues remain.  As explained below, there will be

1  no jury issues remaining to be determined if defendant is

2  convicted.

3       During the (post-conviction) forfeiture phase of the trial,

4       if the government seeks forfeiture of specific
        property, the court must determine whether the
5       government has established the requisite nexus between
        the property and the offense.  If the government seeks
6       a personal money judgment, the court must determine
        the amount of money that the defendant will be ordered
7       to pay.

8  <u>Id.</u>

9       Here, the Government intends to seek a personal money

10  judgment against defendant.  While the forfeitability

11  determination (<u>i.e.</u>, the "requisite nexus" between specific

12  property sought and the offense) may be determined by the jury

13  that returned the verdict on the substantive counts, (Rule

14  32.2(b)(5)), the jury retention option applies only to the

15  forfeiture of specific property, and not to money judgments.

16  <u>Id</u>.  Accordingly, upon a guilty verdict, the government will

17  first ask the Court to issue a preliminary order of forfeiture

18  forfeiting all proceeds of defendant's narcotics offenses and

19  all property traceable thereto.  Fed. R. Crim. P. 32.2(b).  Once

20  a preliminary order of forfeiture is entered, the government

21  will notice a motion for the Court to determine the amount of

22  the personal money judgment.

23       On June 24, 2011, counsel for the government notified

24  defense counsel of the government's position that the Court and

25  not the jury should determine the amount of the money judgment

26  if the jury finds defendant guilty.  Defense counsel has since

27  informed the government that defendant <u>does not object</u> to the

28  government's position.

11

1        B.    The Standard of Proof for Criminal Forfeiture Is

2               Preponderance of the Evidence

3      Forfeiture is an element of defendant's sentence on a count

4 of conviction, not a substantive offense.  Libretti v. United

5 States, 516 U.S. 29, 49 (1995) (because forfeiture is part of

6 the sentencing phase of a criminal case, a defendant has no

7 Sixth Amendment right to have the jury determine the

8 forfeitability of property).  Accordingly, it follows that the

9 standard of proof regarding the forfeitability of property in a

10 criminal case is preponderance of the evidence.  See, e.g.,

11 United States v. Garcia-Guizar, 160 F.3d 511, 518 (9th Cir.

12 1998) (preponderance standard is constitutional because criminal

13 forfeiture is not a separate offense, but only an additional

14 penalty for an offense that was established beyond a reasonable

15 doubt); United States v. Dicter, 198 F.3d 1284, 1289 (11th Cir.

16 1999) (because forfeiture is part of sentencing, preponderance

17 standard applies to all section 853(a) forfeitures); United

18 States v. DeFries, 129 F.3d 1293, 1312 (D.C. Cir. 1997) (in

19 light of Libretti, burden of proof re: forfeiture portion of a

20 RICO case is preponderance of the evidence); United States v.

21 Patel, 131 F.3d 1195, 1200 (7th Cir. 1997) (burden of proof re:

22 forfeiture portion of a section 853 cases is preponderance of

23 the evidence because criminal forfeiture is part of the sentence

24 under Libretti); United States v. Rogers, 102 F.3d 641, 648 (1st

25 Cir. 1996) (same).

26      To meet its burden, the Government anticipates that it will

27 rely in large part on the evidence which it will have already

28 presented during the guilt phase of the trial, because much of

12

the evidence probative of guilt also supports forfeiture.   To
the extent it deems necessary, the Government may present
additional evidence pertaining solely to forfeiture during the
post-verdict forfeiture phase.   The defendants may also present
evidence during the forfeiture phase, which the Government may
seek to rebut, just as in the guilt phase.   Fed. R. Crim. P.
32.2(b)(1)("The court's determination may be based on evidence
already in the record . . . or, if the forfeiture is contested,
on evidence or information presented by the parties at a hearing
after the verdict or a finding of guilt.").

   C.   Third Party Interests Are Addressed in a Separate
        Proceeding

   There is no ancillary proceeding to contest a personal
money judgment against a defendant.   Rule 32.2(c)(1).   However,
to the extent the government seeks to forfeit specific
substitute assets to satisfy a personal money judgment,
defendant's interest in specific property *vis a vis* third
parties should be litigated separately in a post trial
"ancillary proceeding."   In this proceeding, the court (without
a jury) will decide the claims of third parties who assert
interests in specific property to be forfeited.   21 U.S.C.
§ 853(n)(2).   The final order of forfeiture will follow the
adjudication of any third party claims.   Fed. R. Crim. P.
32.2(b)(2), (c).

///
///
///

VI.

EVIDENTIARY ISSUES

The primary evidence against defendant is: (1) the testimony of three UCs to whom defendant sold controlled-substance prescriptions; (2) the video recordings of defendant's distributions to the undercover agents, all containing defendant's statements; (3) patient files and prescription records relating to the prescription to and treatment of the three UCs, which were maintained in defendant's medical offices, in addition to other such records that form the basis of expert testimony; (4) the possible testimony of individuals who worked with defendant in his medical offices; (5) public and/or business records of defendant's prescription history, including summary testimony and reports; (6) testimony from a medical expert witness who will opine that defendant's distributions were outside the course of professional practice and without a legitimate medical purpose; (7) testimony from a pharmacist who filled some prescriptions written by defendant and spoke to defendant about those prescriptions; and (8) expert testimony from a DEA special agent concerning the classification of controlled substances and, if necessary, restrictions imposed under DEA regulations for the distribution of controlled substances by doctors.

A.   Authentication, Identification and Chain of Custody

Rule 901(a) only requires the government to make a prima facie showing of authenticity or identification "so that a reasonable juror could find in favor of authenticity or identification." United States v. Chu Kong Yin, 935 F.2d 990,

14

996 (9th Cir. 1991).   Factors to be considered in the court's
determination include the nature of the article, the
circumstances surrounding the preservation and custody of it,
and the likelihood of intermediaries tampering with it.
Gallegos v. United States, 276 F.2d 914, 917 (9th Cir. 1960).
The government is not required, in establishing chain of
custody, to call all persons who have come into contact with the
piece of evidence.   Reyes v. United States, 383 F.2d 734 (9th
Cir. 1967); Gallegos, 276 F.2d at 917.   Alleged gaps in a chain
of custody go to the weight of the evidence, rather than its
admissibility.   See United States v. Matta-Ballesteros, 71 F.3d
754, 768-69 (9th Cir. 1995).   To avoid defects in the chain of
custody, there must be a showing that the evidence is in
substantially the same condition as when it was seized.   Id.
When exhibits are at all times in official custody, a
presumption of regularity attends the discharge of official
duties.   United States v. Aviles, 623 F.2d 1192, 1198 (9th Cir.
1980.   The government will seek a stipulation as to the chains
of custody for the evidence in this case.   Should defendant not
so stipulate, the government can call two DEA agents to complete
the chain of custody.

     B.   Expert and Summary Testimony

     The government noticed two expert witnesses and one summary
witness, and anticipates calling all of them.

          1.   DEA Diversion Investigator Susannah Herkert

     The government intends to call Diversion Investigator
Susannah Herkert in its case-in-chief.   DI Herkert is expected
to testify regarding the diversion of controlled substances from

15

legitimate avenues to illegal ones, including diversion through
prescription writing.  DI Herkert is also expected to testify
about some of the most commonly diverted prescription drugs such
as oxycodone, hydromorphone, hydrocodone, alprazolam, and
promethazine with codeine (cough syrup), as well as the brand
name forms of these drugs and available dosage levels.  In
addition, DI Herkert will discuss the factors, which based on
her training and experience, are often signs of drug diversion,
including charging customers per prescription and requiring cash
payment; obtaining a brief, if any, physical examination or
medical history; taking requests from customers for medications;
prescribing to customers despite indications that they are drug
addicts; and a pattern of prescribing consistent levels of a
common set of controlled substances to patients.

The Ninth Circuit has repeatedly held that expert testimony
regarding modus operandi is both relevant and admissible in drug
cases.  See, e.g., United States v. Murillo, 255 F.3d 1169, 1176
(9th Cir. 2001) (expert permitted to testify about the value of
drugs found in defendant's rental car, number of doses that such
an amount constituted, modus operandi of drug couriers, and
whether traffickers entrust large quantities of drugs to
unknowing transporters); United States v. Theodoropoulous, 866
F.2d 587, 591 (3d Cir. 1989) (the various roles played by the
defendants in a drug trafficking conspiracy).  In this case, DI
Herkert's testimony is similarly relevant and useful.

Finally, if necessary, DI Herkert will also provide
testimony about DEA registration.  DEA registration is the
administrative process required of all doctors that authorizes

16

the writing of prescriptions for controlled substances.  DI
Herkert will explain what DEA registration is, and will explain
the extent of defendant's authorization to prescribe controlled
substances under his DEA registration, including defendant's
authorization to prescribe controlled substances for the
treatment of addiction.

          2.   Rick Chavez, M.D.

     Dr. Chavez is the founder and medical director of the
P.A.I.N. Institute and is a consultant to the California Medical
Board on the standard of care for family practice, pain
management, and addiction treatment doctors.  He will discuss
the various standards for  pain treatments including non-drug,
non-opioid, and opioid therapies, the effects of each, and the
types of injuries/illnesses treated by each.  Dr. Chavez will
also discuss the serious potential for misuse of opioids,
including oxycodone, and their addictive properties.

     Dr. Chavez will also serve as an expert on the standard of
care for treating pain.  His testimony will assist the jury in
determining whether defendant was acting and intending to act
within the bounds of professional practice for legitimate
medical purpose or not.  Stated differently, his testimony will
establish whether defendant was acting as a doctor or a drug
dealer.

     The jury does not *need* an expert to make this factual
determination.  The jurors will hear and see defendant acting as
a drug dealer on the undercover recordings, e.g., using street
slang to refer to medications, calling his customers "drug
addicts" and "drug dealers", negotiating over the price of his

17

prescriptions, collecting cash.  Nevertheless, the standard of care expert adds value and is appropriate.  "[E]vidence that a physician consistently failed to follow generally recognized procedures tends to show that in prescribing drugs he was not acting as a healer but as a seller of wares."  United States v. Alerre, 430 F.3d 681, 691 (4th Cir. 2005).

He is also expected to testify about the various community standards for pain diagnosis and treatment, including: World Health Organization Guidelines, California state law, federal regulation, and California Medical Board Guidelines.  Based on these standards, he will testify about the standards of care in managing pain patients, including: obtaining a complete physical and history (physical, family, and substance abuse), performing diagnostic tests, developing treatment plan objectives, consulting with other medical professionals, periodically reviewing the course of pain treatment, obtaining records of prior treatment, examining the duration and quantity of medication, maintaining detailed treatment records, and ensuring informed consent, i.e., educating patients on risks and benefits of use.  He will also discuss a physician's duty to watch for signs of abuse, diversion and addiction, and the standard practices related to payment.

Dr. Chavez will testify that defendant's behavior for the charged conduct was an extreme departure from the standard of care expected of licensed physicians in the United States and California.

///

///

### 3.   Kathy Ellis

Kathy Ellis is employed by the California Department of Justice - Bureau of Narcotics Enforcement ("BNE").  For the past eight years, Ms. Ellis has served as the manager of the Controlled Substance Utilization Review and Evaluation System ("CURES") program for BNE.  As Ms. Ellis will explain to the jury, CURES is a program run by the BNE that tracks information including the number of filled controlled substance prescriptions written by doctors in the State of California. Ms. Ellis will provide summary testimony and will testify concerning summary reports of defendant's levels of prescriptions of oxycodone, hydromorphone, hydrocodone, and alprazolam.  Ms. Ellis will introduce additional summary testimony regarding defendant's ranking as one of California's highest prescribers of certain charged controlled substances.

A summary witness may properly testify about, and use a chart to summarize, voluminous records, here the CURES database containing millions of records of prescriptions issued by doctors, and thousands written by defendant.  As the Ninth Circuit has recognized, the court and jury are entitled to have a witness "organize and evaluate evidence which is factually complex and fragmentally revealed."  United States v. Shirley, 884 F.2d 1130, 1133-34 (9th Cir. 1989) (agent's testimony regarding her review of various telephone records, rental receipts, and other previously offered testimony held to be proper summary evidence, as it helped jury organize and evaluate evidence; summary charts properly admitted); United States v. Lemire, 720 F.2d 1327, 1348(D.C. Cir. 1983).  A summary witness

also may rely on the analysis of others as the use of others in the preparation of summary evidence goes to the weight and not the admissibility of the evidence.   United States v. Soulard, 730 F.2d 1292, 1299 (9th Cir. 1984); see Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co., 466 F.2d 722, 727 (7th Cir. 1972) ("It is not necessary . . . that every person who assisted in the preparation of the original records or the summaries be brought to the witness stand.").

The summary reports and charts that will be introduced through Ms. Ellis are admissible under Federal Rule of Evidence 1006.   Federal Rule of Evidence 1006 provides that:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation.   The originals, or duplicates, shall be made available for examination or copying, or both, by the parties at a reasonable time and place.   The court may order that they be produced in court.

The Advisory Committee Notes to Rule 1006 add that: "[t]he admission of summaries of voluminous books, records, or documents offers the only practicable means of making their contents available to judge and jury.   The rule recognized this practice, with appropriate safeguards."

A chart or summary may be admitted as evidence where the proponent establishes that the underlying documents are voluminous, admissible and available for inspection.   See United States v. Myers, 847 F.2d 1408, 1411-1412 (9th Cir. 1988); United States v. Johnson, 594 F.2d 1253, 255-1257 (9th cir. 1979).   While the underlying documents must be "admissible," they need not be admitted."   See Meyers, 847 F2d at 1412; Johnson, 594 F.2d 233, 239 (7th Dir. 1983); Barsky v. United

20

<u>States</u>, 339 F.2d 180 (9th Cir. 1964).

Summary charts may be used by the government in opening statement.  Indeed, "such charts are often employed in complex conspiracy cases to provide the jury with an outline of what the government will attempt to prove." <u>United States v. De Peri</u>, 778 F.2d 963, 979 (3rd Cir. 1985) (approving government's use of chart); <u>United States v. Rubino</u>, 431 F.2d 284, 290 (6th Cir. 1970)(same).

Summary charts need not contain the defendant's version of the evidence and may be given to the jury while a government witness testifies concerning them.  <u>See</u> <u>United States v. Radseck</u>, 718 F.2d 233, 239 (7th Cir. 1983); <u>Barsky</u>, 339 F.2d at 181.  In addition, summary charts are admissible under Federal Rule of Evidence 611(a), which permits a court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." <u>United States v. Poschatta</u>, 829 F.2d 1477, 1481 (9th Cir. 1987); <u>United States v. Gardner</u>, 611 F.2d 770, 776 (9th Cir. 1980).

Typically, charts used under Rule 611(a) for "pedagogical purposes," or as "testimonial aids," should "not be admitted into evidence or otherwise be used by the jury during deliberations." <u>United States v. Wood</u>, 943 F.2d 1048, 1053 (9th Cir. 1991) ("We have long held that such pedagogical devices should be used only as a testimonial aid, and should not be admitted into evidence or otherwise be used by the jury during

21

deliberations."); see also United States v. Abbas, 504 F.2d 123

(9th Cir. 1974) (better practice is that charts used as

testimonial aids not be submitted to jury).  However, charts may

be used under Rule 611(a) and then subsequently admitted into

evidence in those instances in which the defense has had

opportunity to challenge the information contained in the chart.

For example, in Gardner, the district court admitted, over

defense objection, a chart used by a government witness as a

testimonial aid that summarized facts and calculations already

in evidence.  Gardner, 611 F.2d at 776.  The Ninth Circuit held

that the use of this chart as a testimonial aid was appropriate

under Rule 611(a), and that the chart was properly admitted into

evidence under Rule 1006:  "Having thus utilized the chart

without objection with a full opportunity for the defendant to

challenge the facts, figures, calculations and underlying

documents upon which the chart was based, it was not reversible

error to admit the chart in evidence."  Id. at 776; see also

United States v. Olano, 62 F.3d 1180, 1204 (9th Cir. 1995);

United States v. Baker, 10 F.3d 1374 (9th Cir. 1993) (charts

admitted after court examined them outside presence of jury,

defendants had opportunity to review charts and cross-examine

witness, and court gave limiting instruction that charts were

not themselves substantive evidence).

Summary charts of information contained in ledgers and

other documents are admissible where the ledgers are available

to defendant for inspection.  United States v. Catabran, 836

F.2d 453 (9th Cir. 1982).  Similarly, a chart summarizing

unavailable documents is admissible under Fed. R. Evid. 1004 if

the underlying materials are "lost or destroyed" or "not obtainable."  Fed. R. Evid. 1004(1) and 1004(2).

C.   CURES Report and Testimony

As noted, the government intends to introduce evidence of defendant's prescribing history through the testimony of Kathy Ellis.  Ms. Ellis can lay a foundation with respect to CURES reports: she can testify as to how BNE maintains and keeps the data they receive from pharmacies.  Ms. Ellis will testify that the CURES data is comprised only of the activity pharmacies actually report back to BNE.  The CURES reports do not contain every prescription defendant ever wrote, or even every prescription pharmacies filled, as pharmacies do not always report their activity back to the California Department of Justice.  Nonetheless, the CURES reports are reliable in terms of what they purport to capture – pharmacy reporting.  The government sees no prejudice to defendant where the jury will understand what is reflected, and what is not, in the CURES data (which is, at worst, an under-reporting of defendant's prescribing activity).  The government also intends to use the CURES data to compare defendant to other physicians, and to show that his prescription patterns demonstrate his knowledge and intent regarding the charged counts.

The CURES data are relevant and admissible as proof of defendant's knowledge and intent to prescribe control substances to individuals outside the normal course of professional practice and without a legitimate medical purpose.  In addition, the data is among the bases for Dr. Chavez's opinion that the large number of prescriptions defendant wrote for oxycodone

23

informs his opinion that defendant's behavior was far outside the course of ordinary medical practice.  The large number of oxycodone prescriptions, together with expert testimony, will assist the jury in understanding defendant's conduct with respect to legitimate medical practice.

Under Rule 404(b), evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b).  Courts will admit Rule 404(b) evidence if:  1) the evidence tends to prove a material point; 2) the prior act is not too remote in time; 3) the evidence is sufficient to support a finding that the defendant committed the other act; and 4) in cases where knowledge and intent are at issue, the act is similar to the offense charged.  <u>See</u>, <u>e.g.</u>, <u>United States v. Katz</u>, 445 F.3d 1023, 1029 (8th Cir. 2006)(non-indicted prescriptions written by defendant are relevant and admissible under 404(b) as proof of knowledge and intent); <u>see</u>, <u>e.g.</u>, <u>United States v. Stump</u>, 735 F.2d 273, 275 (7th Cir. 1984)(evidence of large number of prescriptions which had been written by defendant but not charged in indictment are admissible under 404(b) as proof of intent to act unlawfully). The probative value of the CURES report is high because it tends to prove that defendant was engaged in a pattern of continuing unlawful conduct outside the scope of a legitimate medical practice and therefore outweighs any prejudice to the defendant. Fed. R. Evid 403; <u>Stump</u>, 735 F.2d at 275.

The CURES reports and summaries thereof that the government intends to introduce are admissible, and not hearsay as they are

business records and/or public records.  The CURES reports are
admissible as public records under 803(8)(B) which include
"records, reports, statements or data compilations, in any form,
of public offices or agencies, setting forth . . . matters
observed pursuant to duty imposed by law as to which matters
there was a duty to report."  Fed. R. Evid. 803(8)(B); see,
e.g., Boerner v. Brown & Williamson Tobacco Co., 394 F.3d 594,
600-01 (8th Cir. 2005)(Surgeon General reports on smoking are
admissible as public records even though the data came from work
conducted by independent and not government scientists since
reports were prepared pursuant to a legal obligation to report
information on smoking to Congress and were prepared by "a
disinterested" agency).  The rule is premised on "the assumption
that a public official will perform his duty properly."  Fed. R.
Evid. 803(8)(C) advisory committee note, citing Wong Wing Foo v.
McGrath, 196 F.2d 120, 123 (9th Cir. 1952).

Alternatively, the CURES reports are admissible under Rule
803(6), the business records hearsay exception.  Fed. R. Evid.
803(6); see, e.g., United States v. Baker,855 F.2d 1353, 1359
(8th Cir. 1988) (lab reports identifying drugs were admissible
as business records since they were made on a routine basis);
see, e.g., Abdel v. United States, 670 F.2d 73, 76 (7th Cir.
1982) (transaction reports of USDA employees completed after
each compliance investigation visit held admissible as business
records).

D.   The Prescriptions and Distribution Evidence

1.   Prescriptions

Among the government's primary evidence of defendant's

25

distributions are the prescriptions he wrote, which were given
to the UCs following each of the charged undercover meetings.
The government obtained these prescriptions directly from
defendant or from his employees (i.e., those in which he gave to
the undercover agents or given by his office staff and/or
Santiago and Rosemary Mendoza).  The UCs also received other
records at various times, including receipts of payment and
appointment cards for future appointments.  These records are
admissible as party admissions under FRE 801(d)(2)(A), as
admissions by employees under FRE 801(d)(2)(D), and/or as
admissions by an authorized party under FRE 801(d)(2)(C).  <u>See</u>,
<u>e.g.</u>, <u>United States v. Bruner</u>, 657 F.2d 1278, 1285 (D.C. Cir.
1981) (holding that prescriptions are admissible under FRE
801(d) as an admission by a party opponent, specifically co-
conspirator statements).  These prescriptions are also
admissible under FRE 807 as they are undoubtedly material, they
are more probative of defendant's illegal prescription-writing
activities than any other evidence, and the interests of justice
will be served by their admission.  <u>See</u> Fed. R. Evid. 807.

2.   <u>Patient Files</u>

The government also intends to admit at trial certain
patient records that were seized from defendant's possession in
the Los Angeles and Downey offices during the underlying search,
specifically the patient files for each of the UCs.  The
government anticipates that the parties will stipulate that
these records are authenticated and non-hearsay for purposes of
trial.

Regardless of whether the parties reach such stipulations,

26

1   here the evidence, including the UC video recordings, show
2   defendant filling out the examination records in the patient
3   files or, as to the July 6, 2010 undercover meeting, Santiago
4   Mendoza filling out the relevant examination record.
5   Accordingly, these documents are also admissible as party
6   admissions under FRE 801(d)(2)(A), as admissions by employees
7   under FRE 801(d)(2)(D), and/or as admissions by an authorized
8   party under FRE 801(d)(2)(C).  See United States v. Rosenberg,
9   515 F.2d 190, 199-200 (9th Cir. 1975) (district court properly
10  admitted doctor's "patient" files for use against him at trial
11  for violations of Section 841(a)).

12      In any event, because the documents were found in
13  defendant's possession in his medical clinic, they are adopted
14  admissions by a party opponent, and are therefore non-hearsay
15  under Federal Rule of Evidence 801(d)(2)(B).  See Fed. R. Evid.
16  801(d)(2)(B) (adopted admission of a party opponent not
17  hearsay); see also United States v. Paulino, 13 F.3d 20, 23-24
18  (1st Cir. 1994) (admitting receipt found during search of
19  defendant's apartment on the ground on the ground that "courts
20  frequently have construed possession of a written statement as
21  an adoption of what its contents reveal"); United States v.
22  Ospina, 739 F.2d 448, 451 (9th Cir. 1984) (admitting document
23  seized from defendant's hotel room as adopted admission).  The
24  Ninth Circuit has held that a document found in a defendant's
25  possession is an adopted admission where the defendant takes
26  some step to act on them to demonstrate more than mere
27  possession of the documents.  United States v. Carrillo, 16 F.3d
28  1046 (9th Cir. 1994) (contents of document found in defendant's

27

possession were properly admitted as adopted admissions because "there was evidence of adoption that went beyond mere possession"); Ospina, 739 F.2d at 451 (admitting content of document as adoptive admission where the defendant "acted on the information written on the cards when he travelled to the address written there to pick up the cocaine"). Here, defendant acted on the records in his possession by actually writing prescriptions to the patients based in part on the information maintained in those files.

Finally, the records are non-hearsay because they will not be used for the truth of any matter asserted in the records themselves. Rather, the absence of x-rays or detailed examination notes therein will be used as circumstantial evidence of defendant's mental state; namely, that he did not intend to conduct adequate examination of the patients, and that defendant issued the prescriptions in bad faith and without a legitimate medical purpose.

E.    Audio Recordings and Transcripts

The undercover agents made audio and video recordings in connection with this case. The undercover agents recorded four meetings with defendant, and captured his drug distributions on audio and/or on video on January 26, 2009, February 23, 2009, April 20, 2009, May 27, 2009, June 4, 2009, March 25, 2010, June 4, 2010, and July 6, 2010. The undercover agents, Medical Board of California Investigator Carlos Rodriguez and DEA Special Agents Christopher Johnson and Erin Groves, can testify that the recordings are accurate, and that transcriptions accurately capture the dialogue contained therein.

28

The statements by defendant and his employees contained on those videos are not hearsay, but rather are admissible as party admissions under FRE 801(d)(2)(A), as admissions by employees under FRE 801(d)(2)(D), and/or as admissions by an authorized party under FRE 801(d)(2)(C).

When the government admits a portion of a defendant's prior statement under Rule 801(d)(2)(A), the defendant may not put in additional out-of-court statements by him because such statements are hearsay when offered by the defendant.  Fed. R. Evid. 801(d)(2); <u>United States v. Nakai</u>, 413 F.3d 1019, 1022 (9th Cir. 2005) (recognizing that exculpatory out-of-court statements that a defendant makes to a witness constitute inadmissible hearsay) (citing <u>Williamson v. United States</u>, 512 U.S. 594, 598-601 (1994)); <u>United States v. Ortega</u>, 203 F.3d 675, 681-82 (9th Cir. 2000) (defendant prohibited from eliciting his own exculpatory statements during cross examination of government agent because to permit otherwise would be to put such statements "before the jury without subjecting [defendant] to cross-examination, precisely what the hearsay rule forbids.");  <u>United States v. Fernandez</u>, 839 F.2d at 639, 640 (9th Cir. 1988)(same).

The only potential limitation of this principle is the "rule of completeness" set forth in Federal Rule of Evidence 106, which has been applied by some courts to require that all of a defendant's prior statements be admitted where it is necessary to place an admitted statement in context or to avoid misleading the trier of fact.  It is entirely proper, however, to admit segments of a statement without including everything,

29

and adverse parties are not entitled to offer additional statements just because they are there and the proponent has not offered them. <u>United States v. Collicott</u>, 92 F.3d 973, 983 (9th Cir. 1996); <u>United States v. Marin</u>, 669 F.2d 73, 84 (2d Cir. 1982). Furthermore, Rule 106 does not render admissible evidence which is otherwise inadmissible under the hearsay rules. <u>See</u> <u>Collicott</u>, 92 F.3d at 983 (hearsay not admitted regardless of Rule 106).

Accordingly, the defendant may not admit additional statements made by him or by one of his employees and/or agents, except as permitted by the Rule of Completeness. The government has provided to defendant the edited and excerpted undercover videos that it intends to provide to the jury (which contain all of defendant's statements that were recorded on the full-length videos), and has not received notice from defendant that defendant intends to admit any other portions of those or any other videos.

F.   Cross-Examination

1.   Cross-Examination of Defendant

A defendant who testifies at trial waives his right against self-incrimination and subjects himself to cross-examination concerning all matters reasonably related to the subject matter of his testimony. The scope of a defendant's waiver is co-extensive with the scope of relevant cross-examination. <u>United States v. Cuozzo</u>, 962 F.2d 945, 948 (9th Cir. 1992); <u>United States v. Black</u>, 767 F.2d 1334, 1341 (9th Cir. 1985) ("What the defendant actually discusses on direct does not determine the extent of permissible cross-examination or his waiver. Rather,

the inquiry is whether 'the government's questions are reasonably related' to the subjects covered by the defendant's testimony"). While Federal Rule of Evidence 404(b) "restricts the use of evidence solely for purposes of demonstrating a criminal proclivity, [i]t does not proscribe the use of other act evidence as an impeachment tool during cross-examination." United States v. Gay, 967 F.2d 322, 328 (9th Cir. 1992).

The Supreme Court has "repeatedly insisted that when defendants testify, they must testify truthfully or suffer the consequences." United States v. Havens, 446 U.S. 620, 628 (1980). "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include a right to commit perjury." Harris v. New York, 401 U.S. 222, 225 (1971). Accordingly, where a defendant lies on the stand, the government is entitled to rebut that testimony with otherwise inadmissible evidence. See generally WEINSTEIN'S FEDERAL EVIDENCE § 607.10. This rule applies to false testimony elicited by the government on cross examination. See Havens, 446 U.S. at 626-27 ("The defendant's obligation to testify truthfully is fully binding on him when he is cross-examined.").

### 2.   Cross-Examination of Other Witnesses

Under Federal Rule of Evidence 608, the credibility of a witness may be supported or attacked by evidence in the form of: (1) prior fraud convictions; (2) prior felony convictions sustained within the past ten years; and (3) opinion or reputation testimony provided that the testimony refers only to the witness' character for truthfulness or untruthfulness. Fed.

31

1   R. Evid. 608.  Moreover, reputation or opinion evidence relating

2   to truthfulness may only be admitted if the witness' character

3   for truthfulness has been attacked.  Fed. R. Evid. 608(a).

4   Similarly, specific instances of conduct of a witness may, in

5   the court's discretion, be inquired into on cross-examination of

6   the witness only if the conduct concerns his character for

7   truthfulness or untruthfulness.  Such conduct, however, may not

8   be proved by extrinsic evidence.  Fed. R. Evid. 608(b).

9        G.   Character Evidence

10       The Supreme Court has recognized that character evidence --

11  particularly cumulative character evidence -- has weak probative

12  value and great potential to result in confusion of the issues

13  and prejudice the jury.  Michelson v. United States, 335 U.S.

14  469, 480, 486 (1948).  The Court has thus given trial courts

15  wide discretion to limit the presentation of character evidence.

16  Id. at 486.

17       Rule 404(a) of the Federal Rules of Evidence governs the

18  admissibility of character evidence.  Rule 404(a) permits a

19  defendant to introduce evidence of a "pertinent" trait of

20  character.  For example, evidence of defendant's family or

21  employment status is irrelevant to whether defendant is

22  believable and law-abiding, and is thus inadmissible.  See

23  United States v. Santana-Camacho, 931 F.2d 966, 967-68 (1st Cir.

24  1991) (testimony of defendant's daughter purportedly showing

25  that defendant was a good family man was inadmissible character

26  evidence inasmuch as such character traits were not pertinent to

27  charged crime of illegally bringing aliens into the United

28  States).

Moreover, the _form_ of the proffered character evidence must be proper. Federal Rule of Evidence 405(a) sets forth the sole methods by which character evidence may be introduced. It specifically states that where evidence of a character trait is admissible, proof may be made in two ways: (1) by testimony as to reputation; and (2) by testimony as to opinion. Thus, defendant may not introduce specific instances of his good conduct through the testimony of others. _Michelson_, 335 U.S. at 477 ("The witness may not testify about defendant's specific acts or courses of conduct or his possession of a particular disposition or of benign mental and moral traits.").

On cross-examination of a defendant's character witness, however, the government may inquire into specific instances of a defendant's past conduct relevant to the character trait at issue. _See_ Fed. R. Evid. 405(a). In particular, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's past crimes, wrongful acts, and arrests. _See_ _Michelson_, 335 U.S. at 481. The only prerequisite is that there must be a good-faith basis that the incidents inquired about are relevant to the character trait at issue. _See_ _United States v. McCollom_, 664 F.2d 56, 58 (5th Cir. 1981).

Unlike character witnesses, who must restrict their testimony to opinion or appraisal of a defendant's reputation, a defendant-witness may cite specific instances of conduct as proof that he possessed a relevant character trait. _United States v. Giese_, 597 F.2d 1170, 1190 (9th Cir. 1979). However, "[o]nce a witness (especially a defendant-witness) testifies as to any specific fact on direct testimony, the trial judge has

33

1  broad discretion to admit extrinsic evidence tending to

2  contradict the specific statement, even if such statement

3  concerns a collateral matter in the case." <u>Id.</u> at 1190

4  (citation omitted).   Thus, if defendant testifies to specific

5  instances of conduct supportive of good character, he opens the

6  door to rebuttal evidence on all reasonably related matters, be

7  they "collateral" or not.   <u>Giese</u>, 597 F.2d at 1190.

8      H.   <u>Cross-examination and Defense Testimony</u>

9      A defendant who testifies at trial waives his Fifth

10  Amendment privilege and may be cross-examined on matters made

11  relevant by his direct testimony.   A defendant has no right to

12  avoid cross-examination on matters which call into question his

13  claim of innocence.   <u>See</u> <u>United States v. Black</u>, 767 F.2d 1334,

14  1341 (9th Cir. 1985); <u>United States v. Mehrmanesh</u>, 682 F.2d

15  1303, 1310 (9th Cir. 1982); <u>United States v. Miranda-Uriarte</u>,

16  649 F.2d 1345, 1353-54 (9th Cir. 1981).

17      Either in cross-examination of government witnesses or in

18  direct testimony of defendant or defense witnesses, the

19  defendant's potential sentence is irrelevant and inadmissible.

20  FRE 402, 403.   "It has long been the law that it is

21  inappropriate for a jury to consider or be informed of the

22  consequences of their verdict." <u>United States v. Franks</u>, 956

23  F.2d 872, 879 (9th Cir. 1992), <u>citing</u> <u>Miller v. United States</u>,

24  37 App.D.C. 138 (1911) ("it is error for the court to put before

25  the jury any considerations outside the evidence that may

26  influence them, and lead to a verdict not otherwise possible of

27  attainment.   The deliberations of the jury should revolve around

28  the evidence before them, and should be uninfluenced by other

34

considerations or suggestions."); <u>United States v. McCracken</u>,
488 F.2d 406, 423 (5th Cir. 1974) ("Except where a special
statutory provision mandates a jury role in assessment or
determination of penalty, the punishment provided by law for
offenses charged is a matter exclusively for the court and
should not be considered by the jury in arriving at a verdict as
to guilt or innocence").  "It is the practice in the federal
courts to instruct juries that they are not to be concerned with
the consequences to the defendant of the verdict, except where
required by statute." <u>Franks</u>, 956 F.2d at 879, <u>citing</u> <u>Rogers v.
United States</u>, 422 U.S. 35, 40, (1975) (jury should have been
admonished "that the jury had no sentencing function and should
reach its verdict without regard to what sentence might be
imposed"); <u>United States v. Reed</u>, 726 F.2d 570, 579 (9th Cir.
1984).  Accordingly, any attempt by defendant to put his
potential sentence, or the fairness of drug laws in general,
before the jury should be rejected.

     As a general rule, character witnesses called by the
defendant may not testify about specific acts demonstrating a
particular trait or other information acquired only by personal
observation and interaction with the defendant; the witness must
be limited to summarizing the reputation of the defendant as
known in the community.  <u>See</u> <u>Michelson v. United States</u>, 335
U.S. 469, 477 (1948).  On cross-examination of a defendant's
character witness, however, the government may inquire into
specific instances of defendant's past conduct relevant to the
character trait at issue.  <u>See</u> Fed. R. Evid. 405(a).  In
particular, a defendant's character witnesses may be cross-

35

1  examined about their knowledge of the defendant's past crimes,

2  wrongful acts, and arrests.  <u>Michelson</u>, 335 U.S. at 477.

3       I.   <u>Affirmative Defenses</u>

4       The government has requested notice of any affirmative

5  defenses defendant intends to utilize.  Defendant has not given

6  notice of his intent to rely on any defense of entrapment,

7  mental incapacity, duress, or alibi.  Therefore, to the extent

8  defendant may attempt to rely on any such defenses, the

9  government reserves the right to object and to seek to have

10  defendant precluded from asserting such defenses.

11                              VII

12                          <u>CONCLUSION</u>

13       The government respectfully requests leave to file such

14  supplemental memoranda as may become necessary during trial.

15

16  DATED: July 12, 2011          Respectfully submitted,

17                                ANDRÉ BIROTTE JR.
                                  United States Attorney
18
                                  ROBERT E. DUGDALE
19                                Assistant U.S. Attorney
                                  Chief, Criminal Division
20

21                                By ___/s/_____
                                  ARIEL A. NEUMAN
22                                BENJAMIN R. BARRON
                                  Assistant United States Attorneys
23

24

25

26

27

28

                               36